UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Gwendolyn Joyce Ayer,

      Plaintiff,

      v.                                                                                                  Civil Action No. 2:11-CV-83

Michael J. Astrue,
Commissioner of Social Security,

      Defendant.

## OPINION AND ORDER
(Docs. 9, 12)

Plaintiff Gwendolyn Ayer brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits. Pending before the Court are Ayer's motion to reverse the Commissioner's decision (Doc. 9), and the Commissioner's motion to affirm the same (Doc. 12).

For the reasons stated below, the Court GRANTS Ayer's motion (Doc. 9); DENIES the Commissioner's motion (Doc. 12); and REMANDS for further proceedings and a new decision.

## Background

Ayer was forty-six years old on her alleged disability onset date of August 20, 2008. She has a high school education, and has worked as a folding-machine operator for a printing company for approximately thirteen years and as an assembly line worker for approximately three years. She is divorced, and has two adult sons.

In August 2008, Ayer stopped working, complaining of right ankle pain and foot pain. She was diagnosed with tarsal tunnel syndrome, and in December 2008, she underwent tarsal tunnel release surgery. Thereafter, Ayer's ankle pain decreased, but she continued to use an ankle brace and a cane for ambulation. In late 2008, Ayer complained of lower back pain, and was diagnosed with sciatic neuralgia[1]. An April 2009 MRI revealed degenerative disc disease. Ayer was prescribed morphine to alleviate her back and ankle pain. She has also complained of wrist, hip, leg, and knee pain; and has suffered from sleep problems, hypertension, and gastroesophageal reflux disease. Additionally, Ayer has been diagnosed with chronic pain syndrome, major depressive disorder with anxiety, and posttraumatic stress disorder stemming from incidents of domestic assault. She testified at the administrative hearing that she was able to stand for only approximately ten or fifteen minutes at a time, before her back started to stiffen and ache. She further testified that, mainly due to her mental impairments, she did not want to leave her house or be around people, and did not drive a car. Ayer is easily overwhelmed, and cried at various times during the administrative hearing.

In October 2008, Ayer filed applications for supplemental security insurance and disability insurance benefits. In her disability application, she alleged that she has been unable to work since August 20, 2008 due to tarsal tunnel in the right ankle, resulting in limitations in her ability to walk without pain. (AR 152.) Later, she updated her

---

[1] "Sciatic neuralgia" is "[p]ain in the lower back and hip radiating down the back of the thigh into the leg, initially attributed to sciatic nerve dysfunction . . . but now known to usually be due to herniated lumbar disk compressing a nerve root . . . ." STEDMAN'S MEDICAL DICTIONARY 1731 (28th ed. 2006).

application to assert that she was also unable to work due to knee and back pain, as well as depression. (AR 188.) On August 3, 2010, Administrative Law Judge ("ALJ") Robert Klingebiel conducted a hearing on the disability application. (AR 31-54.) Ayer appeared and testified, and was represented by counsel. On October 14, 2010, the ALJ issued a decision finding that Ayer was not disabled under the Social Security Act from her alleged onset date through the date of the decision. (AR 7-16.) A few months later, the Decision Review Board ("DRB") notified Ayer that it had not completed its review during the time allowed, thus making the ALJ's decision final. (AR 1-3.) Having exhausted her administrative remedies, Ayer filed the Complaint in this action on April 4, 2011. (Doc. 3.)

## **ALJ Decision**

The Commissioner uses a five-step sequential process to evaluate disability claims. *See Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004). The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if the impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity ("RFC"), meaning "the most [the claimant] can still do despite [his or her mental and physical] limitations," based on all the relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945. The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this sequential analysis, ALJ Klingebiel first determined that Ayer had not engaged in substantial gainful activity since her alleged disability onset date of August 20, 2008. (AR 10.) At step two, the ALJ found that Ayer had the following severe impairments: "right tarsal tunnel syndrome status post tarsal tunnel release," degenerative disc disease of the lumbar spine, depression, and anxiety. (*Id.*) Conversely, the ALJ found that Ayer's right knee impairment was nonsevere. (*Id.*) At step three, the ALJ determined that none of Ayer's impairments, alone or in combination, met or medically equaled a listed impairment. (AR 10-11.)

4

Next, the ALJ determined that Ayer had the RFC to perform "light work," as defined in 20 C.F.R. § 404.1567(b), except as follows:

> [Ayer] can stand or walk for 2 hours, and sit for 6 hours during an 8-hour workday. She can occasionally climb, stoop, and crouch, but frequently balance, kneel, and crawl. [Ayer] can understand and remember tasks with 3 or more steps. She cannot tolerate intense or high stress tasks due to low frustration tolerance, but can sustain concentration, persistence, and pace for two-hour periods over an 8-hour day and 40 hour workweek. She cannot perform tasks that involve sustained or stressful interaction with the public or coworkers, but can collaborate with supervisors and handle low stress interactions with coworkers.

(AR 12.) Given this RFC, the ALJ found that Ayer was capable of performing her past relevant work as an assembly line worker. (AR 14-15.) Alternatively, the ALJ determined that there were other jobs existing in significant numbers in the national economy that Ayer could perform. (AR 15.) The ALJ concluded that Ayer had not been under a disability from the alleged onset date of August 20, 2008 through the date of the decision. (AR 16.)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found to be disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §

423(d)(2)(A).

In reviewing a Commissioner's disability decision, the court limits its inquiry to a "review [of] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). A court's factual review of the Commissioner's decision is limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder."). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Poupore*, 566 F.3d at 305. In its deliberations, the court should consider that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## Analysis

Ayer's first argument is that the ALJ committed error by failing to fully develop the record. Specifically, Ayer asserts that the ALJ should have requested the following evidence: (a) medical source statements from Ayer's treating sources; (b) a medical report associated with psychiatric treatment which Ayer testified was scheduled to occur approximately one month after the administrative hearing; (c) medical records associated

6

with Ayer's alleged grant of long-term disability; (d) Ayer's physical therapy records; (e) an August 2009 evaluation completed by the Spine Clinic of Dartmouth Hitchcock Medical Center; and (f) June 2010 disability forms completed by Ayer's treating nurse practitioner, Christopher Laurent, FNP-BC, and referenced at the administrative hearing and in treatment notes contained in the record.  (Doc. 9 at 18-19.)  In response, the Commissioner contends that Ayer and her representative failed to meet their own affirmative duty to promptly provide all relevant evidence to the Commissioner.  (*See* Doc. 12 at 12-13.)  While the Court is not persuaded by all of Ayer's claims regarding how far the ALJ should have gone to develop the record, the Court finds that remand is required, given the ALJ's failure to request medical opinions from any of Ayer's treating providers, including Nurse Practitioner Laurent, which resulted in a substantial gap in the record.

      Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ has an affirmative obligation to develop the administrative record.  *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (citing *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982)).  This duty exists even when, as here, the claimant is represented by counsel or a non-attorney representative.  *Perez*, 77 F.3d at 47; *see also Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999); *Mezzacappa v. Astrue*, 749 F. Supp. 2d 192, 204, 207 (S.D.N.Y. 2010).  When the claimant is unrepresented, the ALJ has a heightened duty "to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts."  *Echevarria*, 685 F.2d at 755 (quotation omitted).

Here, even though Ayer was represented by counsel at the administrative hearing, that representation appears to have been somewhat limited.  Ayer asserts (and the Commissioner does not deny) that she was unrepresented when she failed to appear at the first hearing on her claim, and that the attorney who represented her at the second hearing filed a notice of appearance approximately five weeks before that hearing.  (*See* Doc. 9 at 18; Doc. 13 at 2 (citing AR 27-29, 31, 106, 114).)  Moreover, the record reveals that, by the time of the second administrative hearing, the record was not adequately prepared.  The ALJ stated at the end of that hearing, which occurred in August 2010: "[T]he latest medical records that I see are basically in April of 2009.  Have there been more recent . . . treatment records that have been requested that we do not . . . have yet . . . ?"  (AR 53.)  Ayer responded: "Oh, absolutely," and Ayer's counsel similarly responded in the affirmative, stating: "I will contact the disability group and find out where those records are. . . .  I do the hearings for the disability group and . . . I don't know why the records aren't in the file."  (*Id.*)  The ALJ agreed to hold the record open for thirty days so that counsel could gather the records.  (*Id.*)  There was also some discussion at the beginning of the hearing about "two documents" that Ayer's counsel stated she had in her possession but which had not been submitted to the Commissioner.  (AR 34-35.)  Without inquiring about the substance of those documents, the ALJ told counsel that she could mail them to the Commissioner, so long as they did not duplicate documents already in the record.  (AR 35.)  Approximately three months after the administrative hearing, by the time the DRB received the case, Ayer was unrepresented again.  (AR 21-26.)

A review of the record indicates that medical records which post-date April 2009 were in fact submitted to the Commissioner within thirty days of the hearing. (AR 20, 383-469.) However, it does not appear that the "two documents" referenced by counsel at the beginning of the administrative hearing were submitted, and the ALJ did not specifically request them or acknowledge their absence in his decision. Also noteworthy, although the record contains many treatment notes, there are no medical opinions from Ayer's treating sources[2], including her treating family nurse practitioner, Christopher Laurent. The ALJ appears to have been aware of this deficiency in the record, stating in his decision: "As for the opinion evidence, it should be noted that none of [Ayer's] treating physicians have offered opinions indicating that she is limited in any way." (AR 14.) It would have been more accurate for the ALJ to have acknowledged that the record contains no opinions – supportive or not supportive of disability – from any of Ayer's treating providers, physicians or otherwise. For the reasons stated below, and given the unique factual circumstances of this case, the Court finds that the ALJ failed to properly develop the record with respect to opinions from Ayer's treating medical sources, including Nurse Practitioner Laurent[3]. Had the ALJ made this request, at a minimum, Laurent's Functional Capacity Questionnaire and Mental Capacities Evaluation, which

---

[2] The record does include a January 2009 evaluation completed by Kathleen Filkins, M.A., which includes Filkins' opinion that Ayer "would have difficulty performing the duties of a regular workweek including standing and walking." (AR 268.) However, Filkins was not a "treating" source, as she examined Ayer on only one occasion, at the request of the Social Security Administration. The record also includes the assessments and opinions of agency consultants Drs. Leslie Abramson, Joseph Patalano, William Farrell, and Geoffrey Knisely (AR 270-80, 374-82), but none of these providers examined Ayer.

[3] Although it is not entirely clear from the record, it appears that the disability forms prepared by Nurse Practitioner Laurent which are attached to Ayer's motion were the "two documents" referenced by Ayer's counsel at the administrative hearing. (*See* AR 34; Docs. 9-1, 9-2.)

9

are attached to Ayer's motion (*see* Docs. 9-1, 9-2), likely would have been included in the record and reviewed by the ALJ.

The Commissioner's own regulations support a remand in this case, describing the ALJ's duty to develop the record as follows: "Before we make a determination that you are not disabled, we will develop your complete medical history ... [and] will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports." 20 C.F.R. § 404.1512(d); *see Perez*, 77 F.3d at 47. The regulations further provide that, when the medical reports received are "inadequate" for the ALJ to determine whether the claimant is disabled, the ALJ "will seek additional evidence or clarification from [the claimant's] medical source." 20 C.F.R. § 404.1512(e); *see Perez*, 77 F.3d at 47. Case law underscores the importance of obtaining medical *opinions*, as opposed to merely medical data or treatment notes. In *Peed v. Sullivan*, 778 F. Supp. 1241, 1246 (E.D.N.Y. 1991), the district court explained:

> Because "[t]he expert opinions of a treating physician as to the existence of a disability are binding on the factfinder," it is not sufficient for the ALJ simply to secure raw data from the treating physician. What is valuable about the perspective of the treating physician—what distinguishes him from the examining physician and from the ALJ—is his opportunity to develop an informed *opinion* as to the physical status of a patient. To obtain from a treating physician nothing more than charts and laboratory test results is to undermine the distinctive quality of the treating physician that makes his evidence so much more reliable than that of an examining physician who sees the claimant once and who performs the same tests and studies as the treating physician. It is the *opinion* of the treating physician that is to be sought; it is his *opinion* as to the existence and severity of a disability that is to be given deference.

Although *Peed* involved a *pro se* claimant and the opinions of a treating physician, whereas this case involves a represented claimant and the opinions of treating sources

10

other than physicians, the rationale is the same.  The ALJ should not have been satisfied with merely treatment notes and raw medical data; he should have made a specific request for medical opinions from Ayer's treating sources, including Nurse Practitioner Laurent.

The record also does not contain any RFC assessments from Ayer's treating sources.  But the law provides that the ALJ has an affirmative duty to request such assessments from a claimant's treating sources despite what is otherwise a complete medical history.  *See Robins v. Astrue*, No. CV-10-3281 (FB), 2011 WL 2446371, at *2-4 (E.D.N.Y. June 15, 2011) (although ALJ considered plaintiff's hospital and treatment records, plaintiff's hearing testimony, and an examining consultative physician's assessment; court remanded because ALJ did not attempt to obtain medical opinions from plaintiff's treating physicians); *Dickson v. Astrue*, No. 1:06-CV-0511 (NAM/GHL), 2008 WL 4287389, at *13 (N.D.N.Y. Sept. 17, 2008) ("In this case, the administrative transcript does not contain any statements from any of plaintiff's treating sources regarding how plaintiff's impairments affect her ability to perform work-related activities.  The ALJ had nothing more than treatment records . . . and consultative reports to review.  Thus, the ALJ had an affirmative duty, even if plaintiff was represented by counsel, to develop the medical record and request that plaintiff's treating physicians assess plaintiff's functional capacity."); *cf. Streeter v. Comm'r of Soc. Sec.*, No. 5:07-CV-858 (FJS), 2011 WL 1576959, at *4 (N.D.N.Y. Apr. 26, 2011) ("Although Plaintiff correctly notes that the record lacks a medical source statement from her treating physician, the ALJ made reasonable efforts to obtain such a record.  The ALJ sent a letter

to Plaintiff's counsel prior to the hearing, advising him about how to obtain Plaintiff's medical records, including medical opinions. In that letter, the ALJ asked counsel to provide him, along with other medical records, with a fully completed Medical Assessment from the physician most familiar with the claimant's impairments; to make a second request if counsel did not receive a medical sources statement; and, if Plaintiff's counsel did not receive the requested information within thirty days of the initial request, to send the ALJ a copy of his letter to Plaintiff's treating source and to contact the ALJ's office immediately so that the ALJ could request the information. In a letter dated May 13, 2005, Plaintiff's counsel sent a request to Plaintiff's treating physician, asking for Plaintiff's complete medical records as well as an opinion about whether Plaintiff was disabled. In addition to his letter to Plaintiff's counsel prior to the hearing, the ALJ specifically asked Plaintiff's counsel, during the hearing, if the medical records were complete, to which Plaintiff's counsel responded affirmatively. . . . Thus, the Court finds that the ALJ met his duty to develop the record completely and to ensure that he had a complete medical record.") (internal quotations and citations omitted).

Here, although the ALJ held the record open after the administrative hearing so that Ayer's counsel could provide more recent medical records, the ALJ did not inquire about the "two documents" referenced by counsel at the hearing (AR 34), and does not appear to have explored whether those documents were contained in the post-hearing submission. Moreover, while the ALJ notified Ayer's counsel at the administrative hearing that there were no "current medical records" (AR 53) in the file, he failed to make any inquiry or request directed towards Ayer or her counsel, orally at the

administrative hearing or in writing thereafter, particularly regarding the lack of medical *opinions* in the record. Nor did the ALJ contact any of Ayer's medical providers in an attempt to obtain their opinions. These failures require remand for further development of the record. *See Rosa*, 168 F.3d at 79; *Perez*, 77 F.3d at 47; *Pratts*, 94 F.3d at 37. The fact that the ALJ requested additional medical records from Ayer's attorney at the administrative hearing does not relieve him of his duty to fully develop the record. *See Newsome v. Astrue*, No. 09-CV-4179 (ADS), 2011 WL 4578422, at *24 (E.D.N.Y. Sept. 30, 2011). Neither does the ALJ's reliance on the opinions of agency consultants relieve him of this duty, as the regulations "are not agnostic as to the source of the evidence needed to assemble an appropriate record; instead, they direct the [ALJ] to seek the information [he] requires from the claimant's 'own medical sources,' and resort to consultative examinations only after 'every reasonable effort' to obtain evidence from the claimant's sources has failed." *Harris v. Astrue*, No. 08-CV-3374 (JG), 2009 WL 8500986, at *4 (E.D.N.Y. Jan. 20, 2009) (citing 20 C.F.R. § 404.1512(d)(2)). Even when the ALJ determines that a consult is required, the claimant's "treating source" is the "preferred source" of the consultation. *Id.* (citing 20 C.F.R. § 404.1519h). Because the ALJ failed to seek an opinion as to Ayer's disability from her treating sources before relying on the opinions of non-treating, non-examining sources, the record was improperly developed. *See Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000) (finding that ALJ had not satisfied duty when he "relied on the opinions of non-treating, non-examining physicians," and opining that "ALJ should have sought such an opinion from [claimant's] treating physicians or, in the alternative, ordered consultative examinations"

13

to assess RFC); *Jones v. Apfel*, 66 F. Supp. 2d 518, 524-25 (S.D.N.Y. 1999) (remanding for further fact-finding because ALJ decision was based solely on consultative medical evaluations and his own subjective observations of claimant at administrative hearing, and did not afford claimant the benefit of medical records from her treating physician or accord her testimony any weight).

      This case is distinguishable from *Steller*, cited in the Commissioner's brief (Doc. 12 at 11), because in that case, there were no "deficiencies or obvious gaps in the record, and the ALJ appear[ed] to have been in possession of [the plaintiff's] complete medical history when she issued her decision." *Steller v. Comm'r of Soc. Sec.*, No. 2:10-CV-160, 2011 WL 926874, at *8 (D. Vt. Mar. 15, 2011). Here, as stated above, although the medical record is lengthy, it contains no medical opinions from Ayer's treating sources, as recognized by the ALJ himself in his decision. Ayer has demonstrated, however, that her treating nurse practitioner, Christopher Laurent, had completed disability paperwork containing his medical opinions regarding Ayer's ability to work approximately one month prior to the administrative hearing, and these opinions were referenced in multiple places in the record before the ALJ. (AR 34, 387, 389; Docs. 9-1, 9-2.) The ALJ's failure to make an effort to obtain these opinions, beyond holding the record open for the submission of "medical records" (AR 53) for thirty days after the hearing, is cause for remand. This is particularly true given that Nurse Practitioner Laurent's disability paperwork contains his medical opinion that Ayer would be absent from work for more than four days each month due to her impairments or treatment, which is likely to have

14

affected the ALJ's decision and certainly merits consideration therein.[4] (Docs. 9-1 at 2-3, 9-2 at 2-3.) The Commissioner's reliance on *Scheck v. Barnhart*, 357 F.3d 697 (7th Cir. 2004) is also unavailing, as that case does not stand for the proposition that a complete record is unattainable so the ALJ may close the record at any time. Rather, *Scheck* stands for the principle that an ALJ need only make a reasonable effort to develop a full and fair record, which effort was not made here. Nor is the Commissioner's citation to *Jordan v. Commissioner of Social Security*, 142 F. App'x 542, 543 (2d Cir. 2005) persuasive, as in that case, the ALJ took the step of contacting counsel to remind him that evidence which counsel volunteered to secure at the administrative hearing had not been received and to notify counsel that a decision would be made on the existing record unless such evidence was timely submitted.

Because the ALJ failed to adequately develop the record, the Court does not reach the other arguments made in the parties' motions, and expresses no opinion on the question of disability. On remand, however, the ALJ should revisit some of his factual findings with closer attention to the record. For example, the ALJ stated in his decision that Ayer reported she was "able to care for multiple dogs" (AR 11), but in fact Ayer stated that she cared for her dogs with the help of her son and her boyfriend (AR 167, 195). Moreover, the ALJ stated in his decision that Ayer reported she was able to "tend to her own personal care needs" (AR 11), but in fact Ayer reported she could not stand in

---

[4] Laurent's disability paperwork also contains Laurent's diagnoses of insomnia, claustrophobia, depression with anxiety, chronic pain syndrome, personality disorder, sciatica neuralgia, degenerative disc disease of the lumbar spine, GERD, and hypertension; as well as Laurent's opinions that Ayer could sit and stand/walk for only 0-2 hours in an 8-hour workday; and was moderately limited in her activities of daily living, social functioning, and concentration, persistence or pace. (Doc. 9-2 at 2-3.)

the shower or get out of the tub, had a difficult time standing up from the toilet, could not tie her shoes or brace, and could not stand at the stove (AR 167, 195). The ALJ also stated in his decision that Ayer reported she was able to "shop in stores" (AR 11), without mentioning Ayer's additional reporting that she required help as well as rests and used a wheelchair while shopping[5] (AR 172, 197). Further, as admitted by the Commissioner, the ALJ's statements that Ayer "[did not] participate[] in any mental health counseling during the period at issue" (AR 10) and "sought no counseling during the period at issue" (AR 14) are inaccurate, as Ayer had four counseling sessions with licensed social worker Michele Authier in January and February of 2009.[6] (AR 318-25.) Moreover, Ayer testified at the administrative hearing that she was scheduled to see a mental health professional approximately one month after the hearing (AR 47), and June 2010 treatment notes from Nurse Practitioner Laurent record that Ayer was "awaiting evaluation by [a p]sychiatrist in September [2010]" (AR 387).

Finally, on remand, the ALJ should consider and address in his decision the January 2009 evaluation completed by agency examiner, Kathleen Filkins, M.A., wherein Filkins diagnosed Ayer with posttraumatic stress disorder and major depressive disorder; assigned Ayer a GAF score of 50, indicating "serious" symptoms or functional

---

[5] Despite stating in a November 2008 Function Report that she used a wheelchair "while shopping" (AR 172), at the August 2010 administrative hearing, Ayer testified that her ankle and legs ached the day after she shopped (AR 46), implying that she did not use a wheelchair while shopping. It would be reasonable to deduce from this evidence that sometimes Ayer required a wheelchair for shopping, and other times she did not. In any event, the record clearly reflects that, when she was not using a wheelchair, Ayer used a cane, crutches, and an ankle brace for shopping. (AR 172, 200.)

[6] Of note, Authier's records include a diagnosis of major depressive disorder and assignment of GAF scores ranging from 45 to 54, indicating moderate-to-serious symptoms or limitations, *see* Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV"), at 32 (4th ed. 2000). (AR 318-25.)

impairments, Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV"), at 32 (4th ed. 2000); and opined that Ayer "would have difficulty performing the duties of a regular workweek including standing and walking." (AR 268.) Additionally, Ayer may submit for the ALJ's review those records which she asserts are currently missing from the file, including Nurse Practitioner Laurent's June 2010 disability forms, September 2010 psychiatric treatment records, long-term disability benefits paperwork, physical therapy records, and August 2009 medical records from the Spine Clinic of Dartmouth Hitchcock Medical Center. (*See* Doc. 9 at 18; Doc. 13 at 4.)

## Conclusion

The Court concludes that the ALJ failed to adequately develop the record. While the record contains treatment notes for the relevant time period from various treating sources, it does not contain any opinions from these sources regarding how Ayer's impairments affected her ability to perform work-related activities. Indeed, the only assessments of Ayer's ability to do work-related activities discussed in the ALJ's decision were provided by non-examining consultative physicians. Although Ayer was represented by counsel at the time of the hearing, given the unique factual circumstances of this case, the ALJ should have encouraged Ayer and her counsel to obtain opinions from Ayer's treating sources, or alternatively, the ALJ should have attempted to obtain opinions directly from those sources, particularly Nurse Practitioner Laurent.

For these reasons, the Court GRANTS Ayer's motion (Doc. 17); DENIES the Commissioner's motion (Doc. 22); and REMANDS for further proceedings and development of the record, in accordance with this ruling.

Dated at Burlington, in the District of Vermont, this 6th day of February, 2012.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge